Joshua D. Hurwit (ISB #9527)
Annie H. Haws (ISB #10412)
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
(208) 342-5000
jdhurwit@hollandhart.com
ahhaws@hollandhart.com

Attorneys for Plaintiff Yomali Labs Limited

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YOMALI LABS LIMITED, an Ireland corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>G1 HOLDINGS LLC d/b/a SOLERRO LLC, an Idaho limited liability company; SOLERRO LLC, an Idaho limited liability company; NICHOLAS COATS; ANTHONY LONGO,<br><br>    Defendants. | Case No. 1:26-cv-122<br><br>**COMPLAINT** |

Plaintiff Yomali Labs Limited ("Yomali"), by and through its attorneys, Holland & Hart

LLP, makes the following Complaint against G1 Holdings LLC, doing business as Solerro LLC

("G1 Holdings"), Solerro LLC ("Solerro"), Nicholas Coats and Anthony Longo, collectively

referred to herein as "Defendants."

## NATURE OF THE ACTION

1. This is a civil action arising from Defendants' failure to pay Yomali under the

terms of a 2024 business revenue sharing agreement and amendments thereto. Under the

**COMPLAINT - 1**

agreement, Yomali advanced $1.5 million to Defendants, through Defendant G1 Holdings, in exchange for Defendant G1 Holdings' future receivables, which Defendants promised to use to pay Yomali $150,000 per month for 12 months.

2. Defendants failed to make required payments and, through amendments to the business revenue sharing agreement, Yomali provided additional opportunities for Defendants to meet their financial obligations to Yomali. Defendants have failed to do so.

3. Indeed, Defendants fraudulently induced Yomali to extend its relationship with them. Defendants' misrepresentations about their business prospects caused Yomali to enter into an additional repayment agreement with Defendants, who also failed to provide to Yomali a proper accounting of how Defendants had used Yomali's funds advanced to them.

4. Yomali seeks damages for breach of contract, breach of the covenant of good faith and fair dealing, fraud in the inducement, accounts stated, accounting, and (in the alternative) unjust enrichment.

5. Yomali also seeks alter ego relief holding Defendants Coats and Longo personally liable for G1 Holdings' and Solerro's unpaid obligations to Yomali.

### PARTIES

6. Defendant G1 Holdings LLC is an Idaho limited liability company with its principal place of business in Meridian, Idaho. G1 Holdings LLC is the sole Manager/Member of Solerro LLC and, upon information and belief, does business as Solerro LLC.

7. Defendant Solerro LLC is an Idaho limited liability company with its principal place of business in Meridian, Idaho.

**COMPLAINT - 2**

8.    Defendant Nicholas Coats is an adult resident of Ada County, Idaho. He is a Manager/Member and Chief Executive Officer ("CEO") of G1 Holdings LLC and the CEO of Solerro LLC.

9.    Upon information and belief, Defendant Anthony Longo is an adult resident of Brazoria County, Texas. He is a Manager/Member of G1 Holdings LLC and the President of Solerro LLC.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction over this action pursuant to Article III, § 2 of the United States Constitution and 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

11.    This Court has personal jurisdiction over Defendant G1 Holdings LLC and Defendant Solerro LLC because they are Idaho limited liability companies. This Court has personal jurisdiction over Defendant Coats because he resides in Idaho. This Court has personal jurisdiction over Defendant Longo because he has transacted business in the District of Idaho with the purpose of realizing pecuniary benefit and, at all times relevant hereto, has had material, continuous, purposeful, and voluntary contacts within the District of Idaho.

12.    Venue is proper in the District of Idaho under 28 U.S.C. § 1391(b) because Defendant G1 Holdings and Defendant Solerro LLC are Idaho limited liability companies, because Defendant Coats resides in the District of Idaho, and because a substantial part of the events and omissions giving rise to the claims in this action occurred in the District of Idaho.

**COMPLAINT - 3**

## GENERAL ALLEGATIONS

***Defendants Breach Their Contractual Obligations to Yomali***

13.    Defendant G1 Holdings LLC (hereinafter "G1 Holdings") and Defendant Solerro LLC (hereinafter "Solerro") purportedly offer solar installation services in Idaho and elsewhere both to homeowners and other businesses that provide solar installation services. Upon information and belief, G1 Holdings and Solerro use their websites to solicit customers and investors.

14.    In April 2024, Yomali, through its "GrowthBoost" division, and G1 Holdings entered into a "Business Revshare Agreement" ("April 2024 Agreement"). Under this initial agreement, G1 Holdings "retain[ed] Yomali to purchase its online store future receivables in exchange for a merchant cash advance." Under the April 2024 Agreement, Yomali advanced to G1 Holdings $1,500,000 as the purchase price of G1 Holdings future receivables. G1 Holdings— through Defendant Longo, acting as its governor, manager, and member—agreed to pay to Yomali $1,800,000 through 12 monthly payments of $150,000.

15.    G1 Holdings began almost immediately to default on its payment obligations under the April 2024 Agreement.

16.    In August 2024, G1 Holdings—through Defendant Longo, acting as its governor, manager, and member—signed an amendment to its contract with Yomali titled "Services Agreement: Amendment to the provision of a Revshare agreement between the two parties signed in April 2024 with ID 008" (the "August 2024 Amended Agreement"). In the August 2024 Amended Agreement, Defendant Longo, on behalf of G1 Holdings, acknowledged, that it "ha[d] failed to be able to maintain the repayment agreement that was specified in the" April 2024 Agreement. Specifically, Defendant Longo acknowledged that G1 Holdings had only paid

COMPLAINT - 4

Yomali $200,000, leaving a balance of $1,602,250. Under the terms of the August 2024 Amended Agreement, G1 Holdings agreed to pay Yomali $100,000 in September of 2024 and then $50,000 per week starting in October 2024 until the balance of the amount owing to Yomali was satisfied.

17.     G1 Holdings continued to default, failing to make required payments due to Yomali under the August 2024 Amended Agreement.

18.     By December 2025, G1 Holdings had only paid $340,000 of the $900,000 that Yomali had invoiced to G1 Holdings.

***Defendants Fail to Provide Requested Financial Information as Required***

19.     Under the April 2024 Agreement, as incorporated into the August 2024 Amended Agreement (and later, the Penalty Agreement), Yomali was entitled to read-only access to G1 Holdings' bank account and the right, upon reasonable notice, to audit G1 Holdings' business, operations, books, records, documents, data, and information to assess compliance. Yomali was also entitled to terminate the agreement if Defendants failed to comply with Yomali's requests for information in a timely manner or if the documents, materials, or information were insufficient or unsatisfactory.

20.     From October 2024 through January 8, 2026, Yomali, through its Chief Financial Officer ("CFO"), with very few exceptions, had a weekly call with Defendant Coats. Defendant Coats would share his screen to show Yomali's CFO G1 Holdings' and/or Solerro's financial records to make the case that their financial condition was improving and Yomali should remain patient rather than exercise its rights under the agreements. In these calls, Yomali requested that Defendant Coats follow up after the call to actually provide the financial performance documentation for G1 Holdings and Solerro to Yomali. These interactions occurred on, without

COMPLAINT - 5

limitation, the following dates: October 17, 2024; October 31, 2024; November 14, 2024; November 28, 2024; December 12, 2024; January 9, 2025; January 23, 2025; February 6, 2025; February 20, 2025; March 6, 2025; March 20, 2025; April 3, 2025; April 17, 2025; May 1, 2025; May 22, 2025; June 12, 2025; June 26, 2025; July 10; 2025; July 24; 2025; August 7, 2025; August 21, 2025; September 11, 2025; September 25, 2025; October 9, 2025; October 23, 2025; November 6, 2025; November 20, 2025; December 4, 2025; December 18, 2025; and January 8, 2025.

21.    G1 Holdings, through Defendant Coats and otherwise, failed to provide complete, accurate, and timely information in response to Yomali's requests under the parties' agreements.

***Defendants Induce Yomali to Continue the Relationship***

22.    Based on Defendants' breach of the agreements as set forth above, Yomali was prepared to terminate its relationship with Defendants and to seek legal redress.

23.    In the last quarter of 2025, however, Defendants dangled a series of purported deals before Yomali to induce Yomali to forego exercising its rights under the agreements and otherwise pursuing legal remedies.

24.    For example, starting in October 2025, Defendants began to represent that they were close to a deal to sell a data center site. On behalf of G1 Holdings and Solerro, Defendant Coats and Defendant Longo provided to Yomali:

   a.   Correspondence from a bank regarding the financial terms and "next steps" for the project;

   b.   An application letter for the project on October 30, 2025; and

   c.   A letter of intent for the project on December 19, 2025.

**COMPLAINT - 6**

25.     Throughout the summer and fall of 2025, Defendant Coats also frequently showed and discussed with Yomali's CFO "blue sky" projections based upon a supposed transition from Defendants' business model providing residential services to a business model providing solar services for commercial businesses, including acquiring or leasing real estate to produce dedicated solar energy for businesses.

26.     On December 11, 2025, Defendant Coats represented that G1 Holdings/Solerro would be selling their intellectual property (consisting of a technology platform) to a third party to produce income to make a sizeable payment against the outstanding balance owed to Yomali.

27.     In reliance on these misrepresentations and others, Yomali forewent taking legal action to enforce its rights under its prior agreements with the Defendants. Rather, Yomali and Defendant Coats, as G1 Holdings' CEO and on its behalf, entered into a "Penalty Agreement relating to the provision of the Revshare Agreement between the two parties" (the "Penalty Agreement"). Under the Penalty Agreement, G1 Holdings was to pay Yomali $100,000 per week until the balance of $1,381,363 (which included a revised late payment fee) was satisfied.

28.     The Penalty Agreement also provided that Defendant Coats[1] and Yomali's Chief Financial Officer could make agreements by email regarding "any future delinquencies" and that such agreements would "read into" the Penalty Agreement.

29.     G1 Holdings continued to default, failing to make required payments due to Yomali under the Penalty Agreement.

30.     Despite the continued breaches by G1 Holdings of its payment obligations to Yomali under the (i) April 2024 Agreement, (ii) the August 2024 Amended Agreement, and the

---

[1]     In the Penalty Agreement, Yomali mistakenly referred to "Nigel Coates of G1 Holdings" but intended to refer to Defendant Coats, who signed the Penalty Agreement.

COMPLAINT - 7

(iii) Penalty Agreement, Yomali continued to attempt to work with G1 Holdings. Defendants Coats and Longo repeatedly represented to Yomali that G1 Holdings and Solerro were on the cusp of deals that would enable G1 Holdings to pay in full its obligations to Yomali. Upon information and belief, no such deal or deals have been consummated.

31.    G1 Holdings has continued to breach its payment obligations to Yomali.

32.    The balance due and owed under the Penalty Agreement is $1,737,666.96, consisting of (i) the balance remaining on the advance from Yomali, (ii) interest, and (iii) late payment fees.

33.    To date, Yomali has not been paid the balance due by any of the Defendants, despite repeated requests for payment.

***Relationship Among the Defendants***

34.    There is a unity of interests between all Defendants.

35.    When formed in 2023 as an Idaho limited liability company, G1 Holdings' registered agent and sole governor was Defendant Longo. G1 Holdings listed as its principal office the address of 610 N. Keagan Way, Meridian, Idaho, which, upon information and belief, was the home address of Defendant Longo at the time.

36.    Defendant Longo signed the April 2024 Agreement and the August 2024 Amended Agreement on behalf of G1 Holdings. The bank account G1 Holdings listed in the April 2024 Agreement and the August 2024 Amended Agreement was in Defendant Longo's name.

37.    When formed in 2024 as an Idaho limited liability corporation, Solerro's registered agent and sole governor was Defendant Coats. Solerro listed as its principal office the address of 1882 E. Three Corners Drive, Meridian, Idaho, which, upon information and belief, is

COMPLAINT - 8

the home address of Defendant Coats. Upon information and belief, Defendant Coats has remained the registered agent for Solerro at all relevant times.

38.  In 2024, G1 Holdings added Defendant Coats as a manager/member.

39.  In 2024, Solerro substituted G1 Holdings for Defendant Coats as its sole manager/member. The address provided for G1 Holdings was 610 N. Keagan Way, Meridian, Idaho, which, upon information and belief, was the home address of Defendant Longo at the time. Upon information and belief, G1 Holdings continues to be Solerro's sole manager/member.

40.  In 2026, G1 Holdings added Defendant Kayla Coats as a manager/member. Upon information and belief, Kayla Coats is Defendant Coats' wife.

41.  Defendant Coats acts as the CEO of both G1 Holdings and Solerro. Defendant Coats has held himself out as such to Yomali by, for example and without limitation, signing the Penalty Agreement as CEO.

42.  Defendant Longo acts as the President of Solerro and represents himself to be the co-founder.

43.  Upon information and belief, Defendant Coats and Defendant Longo have controlled G1 Holdings and acted on its behalf at all relevant times and continue to do so. Other than Defendant's Coats' wife, no other governors, managers, or members are listed on any of G1 Holdings' public filings.

44.  Upon information and belief, Defendant Coats and Defendant Longo have controlled Solerro, including through G1 Holdings, and acted on its behalf at all relevant times and continue to do so. No other governors, managers, or members are listed on any of Solerro's public filings.

**COMPLAINT - 9**

45.    Upon information and belief, Defendant Coats and Defendant Longo control G1 Holdings' and Solerro's finances, business practices, and decision-making such that G1 Holdings and Solerro are operated as the alter-egos of Defendant Coats and Defendant Longo. Upon information and belief, Defendant Coats and Defendant Longo have paid personal expenses from G1 Holdings' bank account and have diverted the funds received by G1 Holdings from Yomali for their personal use and benefit.

46.    Upon information and belief, Defendant Coats and Defendant Longo have failed to adequately capitalize G1 Holdings and Solerro.

47.    Upon information and belief, Defendant Coats and Defendant Longo have failed to operate G1 Holdings and Solerro separately and have failed to maintain the necessary separate books and records for these LLCs. For example, Defendant Coats and Defendant Longo used Solerro email addresses to communicate with Yomali, including when providing the purported term sheet between a third party and Solerro to attempt to persuade Yomali that they were close to a deal that would allow G1 Holdings to repay the amounts due and owing to Yomali.

48.    Upon information and belief, Defendant Coats and Defendant Longo used G1 Holdings to procure the $1,500,000 advance from Yomali in exchange for future receivables, retained the proceeds for personal and business use, and repeatedly assured Yomali that repayment would be forthcoming under the parties' agreements.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

49.    Yomali incorporates by reference all preceding paragraphs as if fully set forth herein.

50.    A valid and enforceable contract exists between Yomali and Defendants.

**COMPLAINT - 10**

51. Defendants breached the contract by failing to pay Yomali the amounts due thereunder.

52. Yomali has complied with all of its obligations under the contract.

53. Yomali is entitled to recover its damages suffered as a result of Defendants' breach of the contract. The total amount of damages is no less than $1,737,666.96.

54. All conditions precedent to the relief requested herein have been performed, have occurred, or have been waived.

## COUNT II
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

55. Yomali incorporates by reference all preceding paragraphs as if fully set forth herein.

56. The April 2024 Agreement, the August 2024 Amended Agreement, and the Penalty Agreement each imposed on Defendants a duty of good faith and fair dealing in the performance and enforcement of those contracts.

57. Defendants breached the covenant of good faith and fair dealing by, among other things: accepting Yomali's advance of $1,500,000 without timely paying; repeatedly assuring imminent payment to delay Yomali's efforts to collect; failing to make the agreed installment payments; and otherwise acting to deprive Yomali of the benefits of the agreements at issue.

58. As a result of Defendants' breach of the implied covenant of good faith and fair dealing, Yomali has been damaged and seeks recovery in an amount to be proven at trial.

## COUNT III
## ACCOUNTS STATED

59. Yomali incorporates by reference all preceding paragraphs as if fully set forth herein.

**COMPLAINT - 11**

60.    In response to the request from G1 Holdings, Yomali provided to G1 Holdings an advance for future receivables in the amount of $1,500,000, as stated in the April 2024 Agreement signed by Defendant Longo on behalf of G1 Holdings.

61.    Under the April 2024 Agreement, the total G1 Holdings was to pay to Yomali in exchange for the $1,500,000 advance, as stated in Yomali's account with G1 Holdings, amounted to $1,800,000.

62.    Under the August 2024 Amended Agreement, the total G1 Holdings was to pay to Yomali in exchange for the remainder of the unpaid $1,500,000 advance, as stated in Yomali's account with G1 Holdings, amounted to $1,602,250.

63.    Under the Penalty Agreement, the total G1 Holdings was to pay to Yomali in exchange for the remainder of the unpaid $1,500,000 advance, as stated in Yomali's account with G1 Holdings, amounted to $1,381,363.

64.    G1 Holdings received and accepted the $1,500,000 advance from Yomali which Yomali stated in its accounts and retained possession of the advance, except to the extent it repaid Yomali a portion of the advance. Yomali did not timely object to the statement of the accounts from Yomali.

65.    By accepting the $1,500,000 advance subject to the statements from Yomali and by not timely objecting to the stated amounts, G1 Holdings assented to Yomali's statement for the accounts and that the accounts were due and owing, as ultimately reflected in the Penalty Agreement.

66.    As an alternative to its First Claim for Relief, Yomali therefore seeks to enforce the accounts in the amount of $1,381,363, not including interest and late payment fees accruing since the Penalty Agreement was signed.

**COMPLAINT - 12**

## COUNT IV
## ACCOUNTING

67.     Yomali incorporates by reference all preceding paragraphs as if fully set forth herein.

68.     The April 2024 Agreement, the August 2024 Amended Agreement, and the Penalty Agreement require G1 Holdings to maintain complete accounting records open to auditing and subject to information requests by Yomali.

69.     Defendants have refused to provide complete and accurate information to Yomali as requested, including financial statements for G1 Holdings and Solerro, and documentation necessary to account for Yomali's $1,500,000 advance for future receivables provided to G1 Holdings.

70.     Defendants' refusal has harmed Yomali by obstructing its ability to monitor and manage its activities and affairs, complete accurate accounting, identify and recover diverted assets, and make informed business decisions, causing increased costs, operational disruption, and exposure to liabilities.

71.     Yomali seeks an accounting from inception of the April 2024 Agreement to present and an order compelling production of all G1 Holdings and Solerro records, with costs assessed against Defendants.

## COUNT V
## FRAUD IN THE INDUCEMENT

72.     Yomali incorporates by reference all preceding paragraphs as if fully set forth herein.

73.     On behalf of G1 Holdings and Solerro, Defendant Coats and Defendant Longo made the misrepresentations and omissions as set forth above.

**COMPLAINT - 13**

74. The misrepresentations and omissions were material. Defendants knew or should have known that the misrepresentations and omissions were material.

75. The misrepresentations and omissions were made to induce Yomali to enter into the Penalty Agreement and to forego exercising its rights under the parties' agreements or seeking other legal redress.

76. Defendants intended that Yomali rely on their misrepresentations and concealments.

77. The materially false representations and fraudulent omissions by Defendants caused Yomali to act in reasonable reliance to enter into the Penalty Agreement and to forego exercising its rights under the parties' agreements or seeking other legal redress.

78. Yomali relied on Defendants' misrepresentations and omissions. Yomali had a right to rely on the misrepresentations and omissions, and its reliance was reasonable under the circumstances.

79. As a direct and proximate result of Defendants' actions, Yomali has suffered damages in an amount to be proven at trial, but no less than $1,737,666.96.

## COUNT VI
## UNJUST ENRICHMENT

80. Yomali incorporates by reference all preceding paragraphs as if fully set forth herein.

81. In April 2024, Yomali advanced G1 Holdings $1,500,000 in exchange for payment of G1 Holdings' future receivables in the amount of $1,800,000.

82. G1 Holdings and Solerro, are for-profit businesses, and Defendant Coats and Defendant Longo operate G1 Holdings and Solerro for their financial benefit. Yomali did not provide $1,500,000 advance as a gift or in a gratuitous manner. Rather, Yomali reasonably

**COMPLAINT - 14**

expected repayment of $1,800,000 by Defendants in keeping with the purposes of the advance and the expected uses of the advance by Defendants.

83.    Defendants accepted the $1,500,000 advance and did not reject or return the advance to Yomali.

84.    Defendants have been unjustly enriched by the value Yomali conferred through the delivery of the $1,500,000 advance, which Defendants have only repaid in part.

85.    As an alternative to its legal claims, Yomali seeks restitution in the approximate amount of $1,737,666.96 for the value of the $1,500,000 received and accepted by G1 Holdings in 2024, inclusive of interest and late fees through March 1, 2026.

## COUNT VII
## ALTER EGO LIABILITY

86.    Yomali incorporates by reference all preceding paragraphs as if fully set forth herein.

87.    Upon information and belief, there exists such a unity of interest and ownership between G1 Holdings and Solerro, on the one hand, and Defendant Coats and Defendant Longo, on the other hand, that their separate personalities did not and no longer exist, and G1 Holdings and Solerro are the mere instrumentalities and alter egos of Defendant Coats and Defendant Longo.

88.    Upon information and belief, Defendant Coats and Defendant Longo dominate and control G1 Holdings' and Solerro's finances and business practices, failed to adequately capitalize these LLCs, and commingled G1 Holdings' and Solerro's funds with their personal funds. Upon information and belief, Defendant Coats and Defendant Longo used some or all of the funds to pay personal expenses and/or diverted company assets and proceeds for personal benefit.

**COMPLAINT - 15**

89.     Upon information and belief, Defendant Coats and Defendant Longo used G1 Holdings and Solerro to obtain the $1,500,000 advance from Yomali while delaying and avoiding payment by retaining proceeds and issuing repeated assurances to Yomali of imminent payment to forestall collection.

90.     Adhering to G1 Holdings' and Solerro's limited liability company form in these circumstances would sanction a fraud or promote injustice by allowing Defendant Coats and Defendant Longo to use the LLCs to evade liability while enjoying its benefits.

91.     Equity requires disregarding G1 Holdings' and Solerro's limited liability company form and holding Defendant Coats and Defendant Longo personally liable for the LLCs' obligations to Yomali, including the unpaid principal, interest, fees, and costs.

**REQUEST FOR ATTORNEY FEES**

As a result of the conduct by Defendants as enumerated herein, Yomali has been required to retain the services of counsel to assist Yomali in pursuing the prosecution of its Complaint against Defendants.  Yomali is entitled to recover its attorney fees in the pursuit of this litigation pursuant to the provisions of the Federal Rules of Civil Procedure including, but not limited to, Rule 54 of the Federal Rules of Civil Procedure, and pursuant to the express provisions of the parties' agreements.  Yomali is also entitled to reasonable attorneys' fees in the event judgment is entered against Defendants after the entry of default, and such additional amounts as proper if this Complaint is answered or otherwise defended.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Yomali Labs Limited demands judgment in its favor and against Defendants:

**COMPLAINT - 16**

1.     That judgment be entered in Plaintiff's favor against Defendants in the amount of $1,737,666.96 plus such other amounts as may be proven at trial, plus interest accruing after March 1, 2026.

2.     An order compelling Defendants to provide an accounting from inception of the April 2024 Agreement to present and an order compelling production of all G1 Holdings and Solerro records, with costs assessed against Defendants.

3.     An award of Plaintiff's attorney fees and costs incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure, and all other applicable grounds for attorney fees and costs afforded by contract or law, and in the event of a default judgment, reasonable attorney fees and costs.

4.     For pre-judgment and post-judgment interest at the maximum rate of interest permitted by law.

5.     That Plaintiff be granted such other relief as the Court deems just and equitable under the circumstances.


DATED:  March 5, 2026

HOLLAND & HART LLP


By: */s/ Joshua D. Hurwit*
    Joshua D. Hurwit
    Annie H. Haws

    Attorneys for Plaintiff Yomali Labs Limited


37096801_v5


**COMPLAINT - 17**