UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| YOMALI LABS LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>G1 HOLDINGS LLC, d/b/a Solerro LLC, SOLERRO LLC, NICHOLAS COATS, and ANTHONY LONGO,<br><br>Defendants. | Case No. 1:26-cv-00122-REP<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS (Dkt. 8)** |

Before the Court is Defendants' Motion to Dismiss for Forum Non Conveniens (and to dismiss Count Five for lack of particularity) (Dkt. 8). The motion is fully briefed, and the Court heard oral argument on the motion on August 18, 2026. For the reasons below, Defendants' Motion will be denied.

## I. BACKGROUND

This is a commercial dispute involving a transaction between an Irish corporation and related Idaho limited liability corporations and their individual managers/members. As this is a motion to dismiss, the following facts have been primarily drawn from Plaintiff's Complaint (Dkt. 1) and declarations submitted by the parties (Dkts. 8-2, 8-3, 11-1, 14). Defendants have not yet filed an answer.

Plaintiff Yomali Labs Limited ("Yomali") is an Irish corporation. Through its "GrowthBoost" division, it purchases other businesses' future accounts receivable. Compl. at ¶ 14 (Dkt. 1).

Defendant G1 Holdings LLC ("G1") is an Idaho limited liability corporation. *Id.* at ¶ 6. Defendant Solerro LLC ("Solerro") is also an Idaho limited liability corporation. *Id.* at ¶ 7. The

two entities are related: G1 is the sole member of Solerro, and G1 does business under Solerro's name. *Id.* at ¶ 6. G1 and Solerro provide solar installation services to homeowners and businesses. *Id.* at ¶ 13.

Defendant Nicholas Coats is a member of G1 and its CEO and the CEO of Solerro. *Id.* at ¶ 8. He resides in Ada County. *Id.* Defendant Anthony Longo is a member of G1 and President of Solerro. *Id.* at ¶ 9. He formerly resided in Idaho, but now resides in Texas. *Id.*

In April 2024, Yomali and G1 entered into a "Business Revshare Agreement" in which Yomali purchased G1's future accounts receivable. *Id.* at ¶ 14. Defendant Longo, then a resident of Idaho, executed the agreement on behalf of G1. Dkt. 8-3 at ¶ 3. Yomali paid G1 $1,500,000 up front; G1 agreed to pay Yomali $1,800,000 in twelve monthly payments of $150,000. *Id.* The parties also granted Yomali "read-only access" to G1's bank account, as well as the right to audit G1's records, so that Yomali could evaluate G1's compliance with the agreement. *Id.* at ¶ 19. Yomali's Chief Financial Officer Andrew Thornber held regular weekly calls with Defendant Coats for the same purpose. *Id.* at ¶ 20.

The parties' agreement also contained a choice-of-law provision. Section 7.2 of the agreement stated: "[t]his Agreement is governed by, and will be construed in accordance with, the laws of the Ireland without regard to principles of conflict of laws." Coats Decl. Ex. A at 8 (Dkt. 8-2).

G1 began to default on its payment obligations "almost immediately" after signing the agreement. *Id.* at ¶ 15. In August 2024, G1 and Yomali amended their April 2024 contract to require G1 to make weekly payments of $50,000. *Id.* at ¶ 16. Defendant Longo executed the agreement on behalf of G1. *Id.* The August 2024 amendment stated that a balance of

$1,602,250 was still outstanding. *Id.* However, G1 continued to default – as of December 2025, Yomali had invoiced G1 for $900,000 but had only been paid $340,000. *Id.* at ¶ ¶ 17-18.

Confronted with these spotty payments, Yomali alleges it was "prepared to terminate its relationship with Defendants and seek legal redress." *Id.* at ¶ 22. However, in the fall of 2025, Defendants told Yomali that they were close to making a series of deals that would improve their financial position. *Id.* at ¶ ¶ 23-26. These included: (i) selling a data center site, (ii) transitioning from residential to commercial solar services, and (iii) selling their intellectual property. *Id.*

Thereafter, the parties entered into a third and final agreement – the "Penalty Agreement." *Id.* at ¶ 27. The agreement reflected that a $1,381,363 balance was still outstanding and further stepped up G1's payment obligations to $100,000 a week. *Id.*

Nevertheless, G1 continued to fail to make payments. Yomali alleges that the balance due to date under the Penalty Agreement is $1,737,666.96, representing (i) the balance remaining on Yomali's initial advance, (ii) interest, and (iii) late payment fees. *Id.* at ¶ ¶ 31-33.

Yomali sued Defendants on March 5, 2026. *See* Compl. (Dkt. 1). Their Complaint alleges seven counts against Defendants: (i) breach of contract (Count 1), (ii) breach of the implied covenant of good faith and fair dealing (Count 2), (iii) accounts stated (Count 3), (iv) accounting (Count 4), (v) fraud in the inducement (Count 5), (vi) unjust enrichment (Count 6), and (vii) alter ego liability (Count 7). *Id.* at ¶ ¶ 49-91.

On April 6, 2026, Defendants filed the pending motion to dismiss all counts for forum non conveniens and to dismiss Count 5 for lack of particularity (Dkt. 8). The parties have consented to proceed before a magistrate judge. No other major developments have taken place in the case.

## II. LEGAL STANDARD

Where a lawsuit involves a foreign party, the doctrine of forum non conveniens permits dismissal when an adequate alternative forum exists abroad and the balance of private and public interest factors favors litigation in that forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–09 (1947). An oft-repeated principle is that the doctrine applies when a foreign forum has "jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *American Dredging Co. v. Miller*, 510 U.S. 443, 447-48 (1994) (citing *Piper Aircraft*, 454 U.S. at 241).

The forum non conveniens analysis proceeds in three steps: the court determines (1) whether an adequate alternative forum exists; (2) the degree of deference owed to the plaintiff's forum choice; and (3) whether the private and public interest factors favor dismissal. *Piper Aircraft*, 454 U.S. at 254–55.

Defendants generally bear the burden to show that dismissal is warranted. *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001). That burden has been described as "heavy." *Gulf Oil*, 330 U.S. at 508 ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *see also Ravelo Monegro v. Rosa,* 211 F.3d 509, 514 (9th Cir. 2000) (dismissal for forum non conveniens is an "exceptional tool to be employed sparingly[.]"). However, when a plaintiff's chosen forum is not their home forum, this presumption applies with "less force," because it is less reasonable to assume that the chosen forum is truly convenient. *Id.* (quoting *Piper Aircraft*, 454 U.S. at 255-56). Thus, a foreign plaintiff's choice of forum generally receives less deference in the forum non conveniens analysis. *See, e.g.*, *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227-28 (9th Cir.

2011). However, "[c]oncerns about forum shopping, while appropriately considered in the *forum non conveniens* analysis, are muted . . . where Plaintiffs' chosen forum is both the defendant's home jurisdiction, and a forum with a strong connection to the subject matter of the case . . . [in such cases, Plaintiff is] entitled to a strong presumption that its choice of forum was convenient" *Id.* at 1229.

The private-interest factors are "(1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of hostile witnesses, and cost of obtaining attendance of willing witnesses; (3) possibility of viewing subject premises; [and] (4) all other factors that render trial of the case expeditious and inexpensive." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1078 (9th Cir. 2015) (alteration in original). In addition, the Supreme Court has identified that the enforceability of a judgment is another private-interest factor. *Gulf Oil*, 330 U.S. at 508.

The public-interest factors are "(1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; [and] (5) the avoidance of unnecessary problems in conflicts of law." *Ranza*, 793 F.3d at 1078 (alteration in original).

An assertion of forum non conveniens presents a threshold, non-merits issue, and therefore a federal court can dismiss for forum non conveniens before addressing whether it has jurisdiction. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 429 (2007). The issue is committed to the sound discretion of the trial court and is reviewed with deference for clear abuse of discretion. *Lueck*, 236 F.3d at 1143.

On a motion to dismiss for forum non conveniens, "the Court may look beyond the facts alleged in the complaint but must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Halcyon Syndicate Ltd. v. Graham Beck Enters.*, No. 19-cv-04278-JCS, 2020 U.S. Dist. LEXIS 127500, at *57 (N.D. Cal. July 20, 2020) (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004)).

## III. DISCUSSION

Defendants argue that this case should be dismissed under the doctrine of forum non conveniens. *See generally* Defs.' MTD (Dkt. 8-1). They argue that Ireland is an adequate and available alternative forum, and that Plaintiff's forum choice in Idaho should receive reduced deference because Plaintiff is foreign. *Id.* at 6-7 (citing *Piper Aircraft*, 454 U.S at 256; *Lueck*, 236 F.3d at 1114). Turning to the multi-factor forum non conveniens analysis, they first argue that the public interest factors favor dismissal because this case would involve the interpretation and application of foreign law. *Id.* at 8. Similarly, they argue that the private interest factors favor dismissal because relevant evidence and witnesses are international. *Id.* at 8-9. In addition, Defendants move to dismiss Count 5 (fraud in the inducement) for failure to allege operative misrepresentations or omissions with particularity as required by Federal Rule of Civil Procedure 9(b). *Id.* at 9-12.

Plaintiff argues that the Court should not dismiss for forum non conveniens primarily because Idaho is Defendants' home forum and Ireland is an inappropriate alternative forum. *See generally* Pl.'s Resp. to MTD (Dkt. 11). First, Plaintiff argues that Ireland is not an adequate alternative forum because only one of Defendants (G1) has consented to suit there. *Id.* at 7. Next, Plaintiff argues it is entitled to deference in its choice of forum because Idaho, as

Defendants' home forum, is not inconvenient. *Id.* at 7-8. With respect to the private interest factors, Plaintiff states that the relevant witnesses, evidence, and defendants in this case are primarily in Idaho. *Id.* at 8-10. As for the public interest factors, Plaintiff notes that Idaho has a compelling interest in this dispute, and that Idaho law should govern some of its claims. *Id.* at 12-14. Finally, Plaintiff argues that Defendants' Rule 9(b) argument lacks merit because it sufficiently pled misrepresentations and omissions. *Id.* at 16.

Consistent with the parties' briefing, the Court organizes its analysis as follows: (i) determining whether Ireland is an adequate alternative forum, (ii) addressing the degree of deference due to Plaintiff as a foreign plaintiff, (iii) applying the public interest factors, (iv) applying the private interest factors, and (v) addressing Defendants' Rule 9(b) argument.

**A. Adequate Alternative Forum**

The threshold issue in the forum non conveniens inquiry is whether an adequate alternative forum exists. *Piper Aircraft*, 454 U.S. at 255 n. 22. This requirement is "satisfied when the defendant is "amenable" to process in the other jurisdiction. *Id.*; *see also Lueck*, 236 F.3d at 1143 ("an alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum."). The foreign forum must also provide the plaintiff with some remedy for their claims. *Lueck*, 236 F.3d at 1143.

The parties appear to agree that the legal remedy offered by Irish courts for a breach of contract claim would be "adequate" for the purposes of forum non conveniens. Indeed, Plaintiffs attach as Exhibit B to their memorandum an Irish high court decision on remedies for breach of contract. Ex. B to Pl.'s Resp. to MTD (Dkt. 11-2). Instead, the point of contention is Defendants' consent (or lack thereof) to service of process in Ireland.

Here, Defendants' Motion states that "in the event that this action is dismissed in favor of an Irish court and Plaintiff Yomali Labs Limited elects to bring suit against Defendant G1 Holdings in Ireland, Defendant G1 Holdings d/b/a Solerro agrees to: submit to the jurisdiction of an Irish court; and pay any final, post-appeal judgment awarded by an Irish court . . . Defendants are amenable to process in Ireland and will not contest jurisdiction in that forum." Defs.' MTD at 6 (Dkt. 8).

Plaintiff notes that, despite this concession, "[t]here is no corresponding consent on behalf of [other Defendants] Solerro, Coats, and Longo. For this reason, Defendants fail to show that Yomali's claims against Solerro (Counts I through VII), against Coats (Counts V and VII), and against Longo (Counts V and VII) can be adjudicated in their proposed alternative forum." Pl.'s Resp. to MTD at 7 (Dkt. 11).

Defendants' Reply counters that "[t]o eliminate any purported uncertainty regarding the entity defendants, G1 Holdings LLC d/b/a Solerro LLC and Solerro LLC expressly consent to Irish jurisdiction, service, and enforcement of any final, non-appealable judgment entered against those entities." Defs.' Reply to MTD at 3 (Dkt. 13). Conspicuously, however, Defendants are silent on the individual Defendants' consent to process.

At the hearing, Defendants' counsel suggested that both Mr. Coats and Mr. Longo have consented to process in Ireland. Defendants' counsel asserted Defendants Coats's and Longo's declarations supporting Defendants' Motion explicitly declare as much. He appears mistaken. Both declarations expressly consent only on behalf of G1 Holdings, LLC. Coats Decl. at ¶ 12 (Dkt. 8-2); Longo Decl. at ¶ 9 (Dkt. 11-1). Accordingly, on this record, not all Defendants have consented to process in Ireland.

The key question is to what extent all defendants must expressly consent to be sued in the foreign forum for that forum to be "adequate" for the purposes of the forum non conveniens analysis, and whether it is enough that they more generally indicate they are willing to be sued there. The Court has found cases that cut both ways. *Compare Lueck*, 236 F.3d at 1143 (Defendants merely indicated they were "amenable to service of process" in foreign country) *with Carijano*, 643 F.3d at 1225 (district court correctly concluded defendant was amenable to process in foreign country based on "the company's past activities in the country, as well as its stipulation to service of process and consent to jurisdiction there") *and Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d 1446,1450 (9th Cir. 1990) (district court granted motion to dismiss "on the express condition that it consent to the jurisdiction of the Philippine courts, and that it waive any defense of statute of limitations which would not have been available to it had the matter been heard in the United States District Court.").

Here, the Court finds that, on the record before it, Ireland is not an adequate forum. On the particular facts of this case, the failure of the individual Defendants to affirmatively and unequivocally consent to process is dispositive on this issue. *See Carijano*, 643 F.3d at 1225; *Contact Lumber,* 918 F.2d at 1450. G1 and Solerro are limited liability corporations whose assets are unknown. According to the Complaint, G1 defaulted almost immediately on Yomali's $1,500,000 million "loan" and there is an outstanding $1,737,666.96 balance due under the Penalty Agreement. Compl. at ¶ 32 (Dkt. 1). This does not bode well for Plaintiff, should it prevail in this action, recovering completely from G1 or Solerro. As such, Defendants Coats and Longo might be alternate, and necessary, sources of recovery. That Defendants Coats and Longo may never consent to process in Ireland would frustrate the orderly and efficient resolution of this matter. Accordingly, Defendants' Motion fails on this threshold issue.

**B. The Balance of Public and Private Interest Factors**

Even if an adequate alternative forum exists, courts will not disturb the plaintiff's original choice of forum "unless the 'private interest' and the 'public interest' factors strongly favor" dismissal. *Lueck*, 236 F.3d at 1146 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). Here, they do not.

**1. Deference to Plaintiff's Forum Choice**

Where a foreign plaintiff chooses the defendant's home forum, and that forum has a strong connection to the subject matter of the case, concerns about forum shopping are "muted." *Carijano*, 643 F.3d at 1229. Under those circumstances, there is a "strong presumption" that the forum is convenient for the defendant. *Id.* Plaintiff here is entitled to such a presumption.

As framed by both of the parties, this action is essentially one for collection of an outstanding loan debt (and alleged fraud related thereto).[1] While Defendants speculate that Plaintiff may have forum shopped for a venue in the United States to strategically skirt Irish courts and juries that might view the RevShare agreement as unfair under Irish lending practices, the Court finds it more likely that Plaintiff filed in the United States to more efficiently and effectively enforce a judgment against domestic Defendants should it prevail. Indeed, it is difficult to imagine that Plaintiff perceived this arm's length business transaction, between sophisticated business entities and individuals, as implicating unfair lending practices. Accordingly, the Court finds that Defendants' forum shopping concerns are overblown.

Moreover, Idaho is the home forum for Defendants G1, Solerro, and Coats and has a "strong connection" to the subject matter of the case. *Id.* Idaho is where Defendant Longo – on

[1] During oral argument, counsel for Plaintiff described the case as a "collection action." Counsel for Defendants conceded that Defendants "owe money under the agreement," unless the agreement is determined to be "void or voidable" under Irish fair lending practices.

behalf of G1 – executed the RevShare agreement. And Idaho is where Defendants G1 and Solerro operated their solar installation business, allegedly made the misrepresentations or omissions that form the basis of the fraud count, and apparently had an interest in a data center that became relevant to their loan repayment. Finally, the payments at issue flowed through Idaho banks. On balance, then, Plaintiff's choice of forum is convenient for Defendants.[2] Thus, Plaintiff's choice to file in Idaho is entitled to deference.

**2. The Public Interest Factors**

The public interest factors most implicated here are factors three and four: the local interest in having localized controversies decided at home and the interest in trying a case in a forum familiar with the relevant law, respectively. *See Ranza,* 793 F.3d at 1078. The other factors – court congestion, imposition of jury duty, and problems associated with conflicts of law – are less implicated and largely neutral. *Id.* Nonetheless, the Court addresses each factor in turn. *See Piper Aircraft,* 454 U.S. at 257 (district court's forum non conveniens decision entitled to substantial deference "where the court has considered all relevant public and private interest factors . . ..") (citation omitted).

The application of factor one – administrative difficulties flowing from court congestion – is neutral. As Plaintiff notes, "Defendants have not argued that Idaho courts are busier than Irish ones." Pl.'s Resp. to MTD at 11 n.3 (Dkt. 11). Defendants do not dispute this contention in their Reply.

---

[2] While Defendant Longo is no longer a resident of Idaho, Idaho certainly is a more convenient forum for trial for him than Ireland.

The application of factor two – imposition of jury duty on a community that has no relation to the litigation – is neutral.[3] Here, communities in both Idaho and Ireland are related to this litigation. On the one hand, the case involves alleged default on loan debt payments and fraud by Idaho limited liability corporations and their managers for which a jury of their Idaho peers might be appropriate to determine fault and damages. On the other hand, the case involves an Irish corporation that allegedly was the victim of default and fraud by the same Idaho actors for which a jury of its Irish peers might be equally appropriate to determine fault and damages. As such, neither an Idaho jury nor an Irish jury would be subjected to an unfair imposition should this action be prosecuted before them. This factor is in equipoise.

Factor three – local interest in having localized controversies decided at home – is related to factor two but requires a deeper dive into the nature of the controversy. As set forth above, the parties frame this case as a collection action and alleged fraud related thereto. Crucially, all of Defendants' operative conduct that forms the basis of the alleged debt incurred, its default, and related fraud occurred in Idaho. Again, Idaho is where Defendant Longo executed the RevShare agreement, where Defendants operated their solar installation business, where Defendants allegedly made misrepresentations and omissions to Plaintiff's CFO and others, and where a data center Defendants apparently had a deal to sell was located. While Plaintiff's operative conduct in Ireland – largely via the representations its CFO made on weekly conference calls with Defendants – is relevant to the alleged breach/default and fraud, it is far

[3] Plaintiff did not demand a jury trial in its Complaint. *See* Compl. at 16-17. However, Defendants have yet to answer. While the instant RevShare agreement contains a jury trial waiver as to "any matter arising in connection with or in any way related to" the agreement, *see* Dkt. 8-3 at 9, that waiver may not apply to Counts Five through Seven. Moreover, it is questionable, as counsel for Defendant argued, whether the waiver applies to the individual Defendants. Should Defendants demand a jury trial in their Answer, Federal Rule of Civil Procedure 39 likely would entitle them to one, as least as to Counts Five through Seven. *See* Fed. R. Civ. P. 39(a). And the individual Defendants may be entitled to a jury trial on all counts.

less consequential than Defendants' conduct to resolving the claims. Indeed, if the if the RevShare agreement is determined to be a valid and binding contract, the importance of Plaintiff's conduct is minimized.

Accordingly, because the center of gravity of the operative facts is in Idaho, the Court finds that Idaho has a more significant "local interest" in having this dispute decided "at home" than Ireland. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006) (factor three resolves "only if there is an identifiable local interest in the controversy, not whether another forum also has an interest."). The application of factor three thus weighs strongly in Plaintiff's favor.

The application of factor four – the interest in trying a case in a forum familiar with the relevant law – favors Defendants, although not strongly. It is undisputed that – by virtue of a choice-of-law provision in the RevShare agreement – Irish law applies to Counts One through Four. Coats Decl. Ex. A at 8 (Dkt. 8-2). Defendants thus argue that resolving this case would necessitate "expert testimony on Irish law" and "increase the likelihood of inefficiency and error." Defs.' MTD at 8 (Dkt. 8-1). At first blush, then, the Supreme Court's admonition that "the need to apply foreign law point[s] towards dismissal" seems well-founded here. *Piper Aircraft*, 454 U.S. at 260 at n.29 (collecting cases).

However, the Court is not convinced that expert testimony is necessary to resolve Counts One through Four. The Court agrees with Plaintiff that "Ireland is a common-law country with a shared legal heritage." Pl. Resp. to MTD at 15. Hence, the Irish law common law involving breach of contract (governing Counts One through Four) would not be materially different than Idaho common law. *Id.* (citing *Hickey v. Health Serv. Exec.* (2008) IEHC (H. Ct.) (Ir.) ("If a party to a contract breaks that contract the other party is entitled to be compensated on the basis

of what he has lost by reason of the contract not being performed.")). As such, application of Irish law here would not be particularly vexing for the Court or the jury and unlikely would necessitate expert testimony.

Weighed against the application of Irish law to Counts One through Four is the fact that Idaho law likely would apply to Counts Five through Seven under prevailing conflict-of-laws tests. *See* Pl.'s Resp. to MTD at 14-15 (Dkt. 11).[4] For the balance of the counts, then, the Court and jury in Idaho would be well within their expertise. Accordingly, while factor five weighs in favor of Defendants, it does so only slightly.

The application of the fifth and final public interest factor – avoiding unnecessary problems in conflicts of law – is neutral. Again, as to Counts Five through Seven, the Court would have to perform a choice of law analysis if it retained the case. Likewise, an Irish court likely would have to do the same if the Court dismissed the case for forum non conveniens. Thus, there are no unnecessary problems in resolving conflicts of law that could be avoided if the Court granted Defendants' motion. This factor thus is in equipoise.

On balance, then, because the application of factor three weighs heavily in Plaintiff's favor, and the application of factor four weighs only slightly in Defendants' favor, the overall application of the public interest factors weighs in Plaintiff's favor.

**3. The Private Interest Factors**

Application of the private interest factors primarily hinges on the nature of the trial in this case and the enforceability of any judgment. Again, as this is essentially a collection action

---

[4] The Court accepts that Idaho law would apply to Counts Five through Seven under these tests because Defendants did not address this conflict-of-laws issue either in its opening brief or its reply. *See* Defs.' MTD at 8 ("Dismissal would also avoid unnecessary conflict-of-laws issues . . .").

involving alleged fraud, trial will largely focus on Defendants' conduct. As such, the most consequential witnesses and proof will be domestic.

The application of factor one – ease of access to sources of proof – favors Plaintiff. While Defendants framed this case in their briefing as a complex international transaction involving significant foreign witness testimony and documentary evidence, *see* Dkt. 13 at 7, this does not appear to be the case. Unless the RevShare agreement is void or voidable – an issue that may be resolved either by the jury through expert testimony or as a matter of law prior to trial – the fact witnesses and proof in this case is largely domestic and will focus on Defendants' conduct and finances. Defendants Coats and Longo, and other G1 and Solerro employees likely will be the primary witnesses. *See* Pl.'s Resp. to MTD at 9 (Dkt. 11). Presumably, they will speak to representations they made in furtherance of the agreements and reasons why payments were not made. They are located primarily in Idaho (Defendant Longo is in Texas). Moreover, Defendants G1 and Solerro's bank and business records will be important to establish G1 and Solerro's finances at relevant times and context for alleged misrepresentations about ability to pay. Custodians that would authenticate these records are located in Idaho. Thus, access to these witnesses and proof is easier if the case remains in Idaho.

Conversely, foreign witnesses and proof are likely to be less consequential given the nature of the action. Defendants claim that they intend to call as witnesses at trial Yomali employees located in Ireland and the U.K. Defs.' Reply to MTD at 7 (Dkt. 13). However, beyond CFO Thornber – who may speak to the representations that Defendants did or did not make and the materiality thereof – Defendants have not specifically identified other Yomali

witnesses that they would call.[5] Nor have Defendants explained what relevant testimony – regarding the validity of the agreements, breach/default thereof, or alleged fraud – that they might give. Whereas Plaintiff's finances are not at issue in this case, minimizing the need for foreign bank and business records relating to it. On balance, then, the most consequential witnesses and proof are located in the United States, and thus, factor one favors Plaintiff.

Likewise, the application of factor two – availability and cost of witness attendance – favors Plaintiff. Again, while Defendants state that they intend to call Yomali employees as witnesses, they have not identified any beyond CFO Thornber. The Court strains to see how any other Yomali employee – or other foreign witness for that matter, beyond a paid expert – might provide Defendants with relevant and helpful testimony. Conversely, the testimony of Defendants Coats and Longo – and domestic custodians of records – is highly relevant. So far, Defendants Coats and Longo have not committed to accept service of process in Ireland. Thus, their availability as witnesses in Ireland is highly questionable, absent Rule 32 depositions or through application of the Hague Convention. Because the attendance of the most consequential witnesses would be made easier and less costly if the action remains in Idaho, factor two favors Plaintiff.

Factor three – access to subject premises – is likely inapplicable. Here, no real property is directly involved in the case. To the extent real property is involved in the case – specifically, the data center relevant to Plaintiff's fraud claim – that property is located in Idaho.

---

[5] While CFO Thornber is no longer an employee of Plaintiff and currently resides in the United Kingdom (not Ireland), counsel for Plaintiff represented that the relationship is cordial and they intend to facilitate his appearance at trial, or at a minimum for a Rule 32 deposition, should the case remain in Idaho. Otherwise, Defendants have the option of securing his trial testimony through the Hague Convention.

As for factor four – "other factors" – the parties raise no other factors that otherwise are not addressed by their arguments as to the other public or private interest factors.

Finally, application of the final private interest factor (separately recognized by the Supreme Court) – enforceability of a judgment – favors Plaintiff. Plaintiff notes that it will be "far easier for Yomali to be made whole by enforcing an American judgment against American defendants, versus trying to domesticate an Irish judgment here." Pl.'s Response to MTD at 11 (Dkt. 11). The Court agrees. While Defendants represent that G1 and Solerro will "satisfy any final, non-appealable judgment entered by an Irish court as to claims asserted against the respective entities," Dkt. 13 at 3, conspicuously they make no such representation as to Defendants Coats and Longo. Given the uncertainty as to G1's solvency due to their alleged failure to make the subject loan payments, this is a significant fact in the "enforceability of judgment" calculus.[6] As there are yet no counterclaims against Plaintiff in this case, Defendants posit no competing claim as to enforceability. Thus, factor five favors Plaintiff.

Accordingly, the Court concludes that Defendants' Motion to Dismiss Based on Forum Non Conveniens lacks merit. Ireland is not an adequate alternative forum. Even if it were, the balance of public and private interest factors weighs in Plaintiff's favor. Thus, Defendants' Motion will be denied.

**C. Defendants' Motion to Dismiss**

Lastly, Defendants argue that Count Five of Plaintiff's complaint (the fraud claim) should be dismissed under Federal Rule of Civil Procedure 9(b) for failing to state the

---

[6] While Defendants cite the Uniform Foreign-Country Money Judgments Recognition Act, which provides a framework for the enforcement of money judgments rendered in other countries, it is unclear how this statute would operate for a foreign judgment where Defendants Coats and Longo have not voluntarily appeared in the case. *See* Idaho Code § 10-1401 *et seq*.

misrepresentations or omissions underlying the alleged fraud in the inducement with particularity. Defs.' MTD at 9 (Dkt. 8-1).

To survive a motion to dismiss on Rule 9(b) grounds, a plaintiff's complaint must allege the "who, what, when, where, and how" of the defendant's fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The allegations must "be specific enough to give defendants notice of the particular misconduct. . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds*.

In Count Five, Plaintiff alleged that "[o]n behalf of G1 Holdings and Solerro, Defendants Coats and Defendant Longo made the misrepresentations and omissions as set forth above." Compl. at ¶ 73. In paragraph 23, Plaintiff generally alleged that "Defendants dangled a series of purported deals before Yomali to induce Yomali to forego exercising its rights under the agreements and otherwise pursuing legal remedies." *Id.* at ¶ 23. Specifically, Plaintiff alleged that Defendants made the following representations touting the prospects of generating additional revenue to service its debt to Plaintiff: (i) starting in October 2025, Defendants represented that they were close to a deal to sell a data center site and that Defendants Coats and Longo provided to Plaintiff bank communications, an application letter, and letter of intent as proof (*id.* at ¶ 24); (ii) throughout the summer and fall of 2025, Defendant Coats frequently discussed with Plaintiff's CFO its "blue sky" projections based on a purported transition in its business model from residential properties to commercial properties (*id.* at ¶ 25); and (iii) on December 11, 2025, Defendant Coats represented that G1/Solerro would be selling their

intellectual property (consisting of a technology platform) to a third party to produce income to make a sizable debt payment to Plaintiff (*id.* at ¶ 26). Plaintiff further alleged that, notwithstanding these representations that "G1 Holdings and Solerro were on the cusp of deals that would enable G1 Holdings to pay in full its obligations to Yomali . . . no such deal or deals have been consummated." *Id.* at ¶ 30. As a result, Plaintiff alleged that these misrepresentations and omissions caused Plaintiff "to act in reasonable reliance to enter into the Penalty Agreement and to forego exercising its rights under the parties' agreements or seeking other legal redress." *Id.* at ¶ 77.

Defendants argue that these allegations in the Complaint were insufficient to put them on notice of the particulars of their alleged fraud. Defs.' MTD at 11-12. The Court disagrees. As set forth above, Plaintiff identified the "who, what, when, [and] where" of Defendants' alleged fraud with sufficient particularity. *Vess*, 317 F.3d at 1106. Namely, Plaintiff specifically alleged that (i) beginning in October 2025, Defendants Coats and Longo made representations about the data center sale; (ii) in the summer and fall of 2025, Defendant Coats frequently made "blue sky" projections to Plaintiff's CFO; and (iii) on December 11, 2025, Defendant Coats represented that Defendants were selling their intellectual property to generate income. Compl. at ¶¶ 24-26. Plaintiff alleged that each of these representations (or omissions) were false insofar as the sales and rosy projections did not materialize, and that in reliance thereupon, Plaintiff forewent legal action and instead entered into an additional agreement to its detriment. *Id.* at ¶¶ 27, 30, 73-77. These allegations sufficiently notified Defendants of the "who, what, when, where, and how" they allegedly committed fraud in the inducement. At this pleading stage, Rule 9(b) requires nothing more.

Of course, Defendants may later challenge these alleged misrepresentations and omissions in a motion for summary judgment. At that stage, Defendants may provide proof that establishes that no genuine dispute of material fact exists that the representations were false or misleading when they made them, or that they were unaware of their falsity or misleading nature. While now is not the time for such a motion, the Complaint provides Defendants with a sufficient roadmap for what allegations to challenge and how. Accordingly, the Court will deny Defendants' Motion to Dismiss Count Five for lack of particularity.

## IV. ORDER

Based on the foregoing, IT IS THEREFORE HEREBY ORDERED:

1. Defendants' Motion to Dismiss for Forum Non Conveniens and to Dismiss Count Five for Lack of Particularity (Dkt. 8) is DENIED in its entirety.

DATED: August 25, 2026

Honorable Raymond E. Patricco
Chief U.S. Magistrate Judge